J-A10010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                      :            PENNSYLVANIA
                                        :
             v.                           :
                                        :
                                        :
KHALIL SCOTT                      :
                                        :
           Appellant             :     No. 237 EDA 2023

Appeal from the Judgment of Sentence Entered December 20, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000808-2019

BEFORE:    PANELLA, P.J.E., BECK, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:            **FILED DECEMBER 19, 2024**

Appellant, Khalil Scott, appeals from the judgment of sentence following his jury convictions of robbery, conspiracy to commit robbery and conspiracy to commit aggravated assault.[1] In this appeal, Appellant argues that the evidence was insufficient, the trial court erred by denying his motion for a new trial based on the weight of the evidence, and the motion in limine court abused its discretion in rendering two evidentiary decisions. We affirm.

The trial court summarized the record evidence in its written opinion, as follows:

> On December 16, 2017, in Philadelphia, Pennsylvania, Complainant, Soraya Yin, (hereinafter, "Complainant") was preparing to meet Appellant, Khalil Scott (hereinafter,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3701 (robbery); 2702(aggravated assault); and 903 (conspiracy).

"Appellant") to complete a drug transaction at FDR Park in Philadelphia. Appellant and Complainant conducted approximately thirty to forty transactions of a similar sort together before the date of the incident. N.T. 2/10/22, 74-75. The following day, Appellant texted the Complainant asking if they could meet another day since he had to wait for his brother. *Id*.at 89.

On December 17, 2017, at approximately 10:00 a.m., Appellant texted Complainant and informed him that he was already at FDR Park near the tennis courts under the highway of Interstate 95. *Id*. at 92. The location is considered to be secluded during that time of the year. N.T. 2/9/22 at 104. The Complainant did not expect the Appellant to arrive as early as he did. In preparation for his meeting with Appellant, Complainant placed ten pounds of marijuana in vacuum sealed bags in the trunk of his car. *Id*. at 90. Moreover, Appellant knew Complainant stored marijuana in his trunk. *Id*. at 92.

When the Complainant arrived at FDR Park, he noticed two cars were present; a black sedan and a white Nissan Altima. *Id*. at 95. While the Complainant parked his car, he noticed Appellant standing outside speaking to his friend, Joey Smith who was sitting inside one of the cars. N.T. 2/10/22 at 98. The Complainant did not [recognize] the Nissan Altima when he arrived at the location. *Id*. at 95, 98.

After Complainant parked his car next to Mr. Smith's car, Appellant entered Complainant's vehicle with an envelope. *Id*. at 103-104. This was common practice between the Appellant and Complainant during their business transactions—Complainant would "front" Appellant a certain amount of marijuana and Appellant would later pay him back in cash from the sales of the "fronted" product. *Id*. at 89. Appellant and Complainant had engaged in this business practice before. *Id*. at 104.

Appellant and Complainant were the only two individuals inside of Complainant's car. *Id*. at 103-104, 107. Complainant testified at trial that Appellant was unusually quiet while sitting in the passenger's seat of Complainant's car. *Id*. at 100.

Within minutes of the transaction, the Complainant noticed some individuals crawling behind his car. *Id*. at 104. Complainant subsequently reversed his car and attempted to escape, but ended up crashing into a tree. *Id*.

While backing up his car, Complaint testified that a total of six shots were fired at him. *Id*. As a result, the Complainant suffered multiple gunshot wounds—specifically, in the chest his and the face. *Id*. at 107-108. Seconds after being shot, the Complainant "played dead" in the front seat of his vehicle. [He opened the trunk of the car so his assailants could take the marijuana without coming closer to him, and later, after they had left] exit[ed] his car [and collapsed on the trunk, closing it and falling onto the ground]. *Id*. at 108[-111].

Appellant left the vehicle and fled the scene with the other individuals. *Id*. at 118.

Police Officers were subsequently notified of the incident by a nearby witness. *Id*. When Philadelphia Police Officer Koncyzk arrived at the scene, he attempted to question the Complainant about the incident; however, it was difficult as he noted the Complainant's cheeks were filled with blood. N.T. 2/9/22 at 82. Complainant was ultimately taken to Hahnemann University Hospital by police, where he was listed in critical condition. *Id*. Officers did not find any weapons on Complainant's person. N.T. 2/9/22 at 85.

Trial Court Opinion, 2-4.

In addition, the Complainant subsequently identified Appellant as the person who shot him from a photo array. N.T. 2/10/22, 127-130; N.T. 2/11/22, 11-14, 54-56. He also identified from photo arrays Joey Smith and the other person who was sitting in Smith's car, stating that he had not seen either man with a weapon. N.T. 2/10/22, 95-96, 106, 127; N.T. 2/11/22, 57-58. Moreover, the Complainant and Appellant had been "friends" on social media, and after the shooting Complainant could not find Appellant's profile on the websites he had frequented. N.T. 2/10/22, 142-143. Nor could the police locate Appellant for more than a year despite making efforts. N.T. 2/14/22, 27-33, 120-122. Appellant was arrested on January 11, 2019. *Id*., 122-123.

A forensic expert testified that the gunshot to the victim's chest was "probably" fired from a close distance, and from the cloudy pattern of lead residue, the muzzle of the firearm was one to two feet away from the entry hole in Complainant's outer jacket. N.T. 2/11/22, 120-133; N.T. 2/14/22, 129. A fired cartridge casing was found in the car, which likely had been fired by the gun that produced the cloud of lead residue on Complainant's jacket. N.T. 2/11/22, 140. Two semi-automatic firearms were used in the attack. N.T. 2/14/22, 75. The fired cartridge casing found in the car was the only cartridge fired by one gun. N.T. 2/10/22, 24, 25-36; N.T. 2/14/22, 72. Whereas someone standing outside the car on the driver's side fired at least five shots into the car, some of which struck the body of the car. N.T. 2/10/22, 33-35; N.T. 2/14/22, 72.

On January 12, 2022, the Honorable Giovanni O. Campbell heard and decided multiple motions in limine. **See** Trial Court Orders, 1/12/22; Trial Court Record, 253-265. Trial testimony, before the Honorable Mark J. Moore, commenced on February 9, 2022. Summations, final instructions, and the jury's verdict were on February 15, 2022. The jury found Appellant guilty of robbery and of conspiracy to commit robbery and conspiracy to commit aggravated assault, and not guilty of attempted murder, aggravated assault, possessing an instrument of crime and firearms offenses. N.T. 2/15/22, 182-183. The court sentenced Appellant to an aggregate term of ten to 20 years' imprisonment on August 19, 2022. N.T. 8/19/22, 50. It modified the specific sentence terms on reconsideration, without changing the aggregate, to: six to

twelve years' imprisonment on the robbery conviction; and four to eight years' imprisonment on each of the conspiracy convictions to run concurrently to each other but consecutively to the robbery term. N.T. 12/20/22, 19-20; Amended Sentencing Order; Trial Court Record, 392.

Appellant filed a timely notice of appeal.[2] On January 20, 2023, The trial court ordered Appellant to file a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b)(1), and then granted an extension of time. Trial Court Orders; Trial Court Record, 439, 451. Appellant raised six enumerated claims in his timely Rule 1925(b) Statement. Appellant's Rule 1925(b) Statement, 1-4; Trial Court Record, 453-456.

In his brief, Appellant raises four enumerated claims:

I.    Was the evidence insufficient to convict [Appellant] of robbery, conspiracy to commit robbery, and conspiracy to commit aggravated assault where the Commonwealth failed to show that he planned or participated in the robbery or shooting of the complainant and instead introduced evidence which was equally consistent with [Appellant] also being a victim of the crime?

II.   Did the trial court abuse its discretion in denying the post-sentence motion for a new trial based on the weight of the evidence where the evidence showed only that [Appellant] could have also been a victim of the robbery and the Commonwealth introduced no evidence that he planned or participated in the robbery or shooting?

_____

[2] This appeal is from the amended sentence of December 20, 2022. ***See Commonwealth v. Garzone***, 993 A.2d 1245, 1254 n.6 (Pa. Super. 2010) (in cases where the trial court amends the judgment of sentence during the period it maintains jurisdiction pursuant to 42 Pa.C.S. § 5505, the direct appeal lies from the amended judgment of sentence).

III.    Did the trial court err in ruling that [Appellant's] character witnesses could be cross-examined on an unrelated pending case in which [Appellant] had not been convicted by the time of trial?

IV.    Did the trial court err in precluding [Appellant] from introducing evidence that an alternate suspect in the crime, Joey Smith, had showed consciousness of guilt by fleeing the jurisdiction, giving police a fake name, and resisting arrest before they arrested him and charged him with the same shooting and robbery?

Appellant's Brief, 9.

When reviewing a sufficiency claim, we construe "all the evidence admitted at trial in the light most favorable to the verdict winner," and the evidence is legally sufficient when it would "enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa. Super. 2017). The Commonwealth may prove an offense by means of wholly circumstantial evidence, and the evidence presented "need not preclude every possibility of innocence." *Id*. It is the job of the finder of fact to pass upon "the credibility of witnesses and the weight of the evidence produced," and the fact-finder "is free to believe all, part or none of the evidence." *Id*.

Appellant's sufficiency challenge focuses on the alleged lack of evidence that he was the second shooter who shot Complainant in the chest from inside the car. In his view, the "Commonwealth's entire case was circumstantial, and the evidence was equally consistent with [Appellant] also being a victim of the robbery as it was with [him] being involved in the crime." Appellant's Brief, 29. Appellant's argument is based on a view of the evidence that favors his

defense rather than his guilt, contrary to the standard of review. "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Commonwealth v. Eckrote***, 12 A.3d 383, 386 (Pa. Super. 2010). "[W]e will not disturb the jury's resolution of any conflict" in the testimony, because it is "[t]the jury, not this Court, … [that] is charged with the responsibility of evaluating the credibility of the witnesses." ***Commonwealth v. Faulk***, 928 A.2d 1061, 1069 (Pa. Super. 2007). "Additionally, circumstantial evidence alone is sufficient to convict one of a crime[.]" ***Commonwealth v. May***, 656 A.2d 1335, 1340 (Pa. 1995).

"A person is guilty of robbery if, in the course of committing a theft, he… threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S. § 3701(a)(1)(ii). In order to sustain a robbery conviction under § 3701(a)(1)(ii), there does not have to be a verbal utterance or threat. ***Commonwealth v. Ouch***, 199 A.3d 918, 923–24 (Pa. Super. 2018). Nor does the defendant have to brandish a weapon. ***Commonwealth v. Bragg***, 133 A.3d 328, 332 (Pa. Super. 2016). There is sufficient evidence to sustain a robbery conviction if the evidence shows aggressive actions that threaten the victim's safety. ***Ouch***, 199 A.3d at 923–24.

Complainant positively identified Appellant as the person in the passenger seat when he was shot in his chest from one to two feet away and from the direction where Appellant was sitting during the course of the

robbery.[3] Complainant was focused on the shooter outside the car and so did not see Appellant shooting him. However, since Appellant was the only person that close to Complainant, it was a reasonable inference that it was Appellant who shot him in the chest. On sufficiency review, we must "accept the evidence of record, and all reasonable inferences drawn therefrom on which the factfinder could properly have based its verdict, as factually true." *In the Interest of J.B.*, 189 A.3d 390, 415 (Pa. 2018). Therefore, Complainant's testimony was sufficient to support Appellant's conviction of robbery.

Appellant argues that the shooter could have been one of the two men in Joey Smith's car, or yet another unidentified person holding a gun by the half open passenger side window. Appellant's Brief, 36. This is not a persuasive sufficiency argument. First, the Commonwealth's evidence "need not preclude every possibility of innocence." *Brockman*, 167 A.3d at 38. Second, there was no evidence that someone else was the shooter, at best it was a mere possibility. However, "[e]ven if plausible, [such] speculations do not undermine the sufficiency of the evidence underlying Appellant's conviction." *Commonwealth v. Johnson*, 833 A.2d 260, 264 (Pa. Super. 2003). Third, Appellant's theoretical speculation is not plausible. The physical evidence showed that the gun that fired the bullet that perforated Complainant's chest also deposited: (1) gun powder residue in a cloud on his

---

[3] The object of the robbery was the ten pounds of marijuana in the trunk of Complainant's car worth at least $18,000. N.T. 2/10/22, 83-84.

jacket, indicating the muzzle of the gun was one to two feet away, and (2) likely the fired cartridge casing on the driver's seat inside the car. N.T. 2/9/22, 100; N.T. 2/10/22, 33-35; N.T. 2/11/22, 132-133. Only Appellant was within one to two feet of Complainant. For someone else to have fired the gun and achieve both resulting conditions, they would have had to be reaching through the half open passenger side window so that the muzzle could come within two feet of the Complainant. Further, the vast majority of semi-automatic handguns eject cartridges to the right and rear, thereby requiring a ricochet for the cartridge to land inside the car if the gun was fired from outside it. N.T. 2/10/22, 37. That alone may not be impossible, but the car was in motion when the shooting began. N.T. 2/10/22, 104, 107-108. It is simply not plausible that a gun fired from outside the car while the car was moving would leave the physical evidence found in the car and on Complainant. Therefore, the evidence is not "equally consistent" between Appellant being the shooter or being innocent, as he contends. Appellant's Brief, 37.

Appellant incorrectly argues that "the jury found by acquitting [him] of the substantive shooting offenses, the Commonwealth failed to prove that he committed a shooting." Appellant's Brief, 35. Consistency in a verdict is not required, and an appellate court "will not inquire into, or speculate about, jurors' deliberations or the rationale behind the jury's decision; that the jury's decision may be the result of mistake, compromise, lenity, or any other factor" is not a question for appellate review. *Commonwealth v. Miller*, 35 A.3d 1206, 1213 (Pa. 2012). An acquittal "cannot be interpreted as a specific

finding in relation to some of the evidence." *See id*.[4] The evidence was sufficient for the jury to find Appellant shot Complainant during the course of a theft, and therefore sufficient for robbery.

The evidence also was sufficient to sustain Appellant's convictions for conspiracy to commit robbery and conspiracy to commit aggravated assault. A defendant commits conspiracy when he enters into an agreement to commit an unlawful act with another person with a shared intent, and a conspirator commits an overt act in furtherance of the conspiracy. 18 Pa.C.S. § 903(a)(1); *Commonwealth v. Chambers*, 188 A.3d 400, 409-410 (Pa. 2018). Criminal conspiracy can be proven by circumstantial evidence, including "the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators." *Commonwealth v. Sanchez*, 82 A.3d 943, 973 (Pa. 2013).

The coordinated ambush attack did not occur by happenstance. Appellant's direct action in support of the robbery also proved his involvement in the conspiracy to commit robbery and conspiracy to commit aggravated assault. *See Commonwealth v. Galindes*, 786 A.2d 1004, 1010 (Pa. Super. 2001) (an "explicit or formal agreement to commit an unlawful act may be proved inferentially" by coordinated conduct done with the intent to commit an unlawful act). Appellant argues that he was merely present at the scene,

_____

[4] "[T]his Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict." *Commonwealth v. Stokes*, 38 A.3d 846, 855 (Pa. Super. 2011 )(quoting *Commonwealth v. Petteway*, 847 A.2d 713, 718 (Pa. Super. 2004)), *abrogated on other grounds by* **Alleyne v. United States**, 570 U.S. 99 (2013).

and therefore the Commonwealth failed "to prove [he] either shot the complainant or participated in the robbery or shooting." Appellant's Brief, 32. We have found to the contrary that the evidence was sufficient to prove he shot the victim.

Moreover, there was evidence of planning and coordination. Complainant testified that he had an on-going bulk marijuana selling arrangement with Appellant that had, just before the shooting, increased in volume. The robbery and shooting occurred the second time Complainant was to deliver ten pounds of marijuana to Appellant, and to receive a large payment from Appellant for the first delivery of ten pounds of marijuana. Each delivery was worth at least $18,000. The transaction was to happen the evening before, but at Appellant's initiation was moved to the morning of December 17, 2017. That morning, Appellant texted Complainant early from the agreed upon location. When Complainant arrived he could see Appellant talking to Joey Smith in the driver's seat of his car and Smith's brother in the passenger seat. It was not unusual for Smith to accompany Appellant to a drug exchange. There also was another car that he did not recognize parked nearby in the lot about which Appellant expressed no concern. Once Appellant handed over an envelope with cash in it while sitting inside Complainant's car, he became unusually quiet. In that silence, Complainant saw an unknown gunman coming from behind his car along the driver's side. Complainant put his car in reverse and tried to hit the gunman. Multiple gunshots were fired by the unknown gunman and at least one from the passenger side. Appellant was

the only person near enough to Complainant to shoot him from the right side and leave gunpowder residue on his coat and a fired cartridge casing in the car. Appellant then fled the scene and evaded apprehension for over a year. "[F]light, along with other circumstantial evidence, supports the inference of a criminal conspiracy." **Commonwealth v. Marquez**, 980 A.2d 145, 150 (Pa. Super. 2009) (*en banc*). Because the evidence was sufficient as to each of the challenged convictions, Appellant is due no relief on his first issue.

In his second claim, Appellant argues that the "verdict was against the weight of the evidence because the Commonwealth's entire case was so speculative that no reasonable jury could have convicted based on this evidence." Appellant's Brief, 37. However, he inappropriately repeats the gist of his claims that the evidence was insufficient. Appellant's Brief, 38-39. Claims challenging the weight of the evidence and sufficiency of the evidence are clearly distinct. **See Commonwealth v. Widmer**, 744 A.2d 745, 751-752 (Pa. 2000) (discussing the distinctions). "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." **Commonwealth v. Charlton**, 902 A.2d 554, 561 (Pa. Super. 2006).

"An allegation [raised in a motion for a new trial] that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." **Widmer**, 744 A.2d at 751. "In order for a defendant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'"

*Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa. Super. 2015) (quoting *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003)). A trial court's denial of a motion "based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 880 (Pa. 2008).

"An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). It "*is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.*" *Id*. (emphasis in original, quoting *Widmer*, 744 A.2d at 753). This Court must limit review to "whether the trial court abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." *Id.* at 1056.

The trial court explained its reasons for denying Appellant's motion for a new trial, as follows:

> Appellant contends the trial court erred because there was no evidence in the record to conclude that Appellant was a perpetrator of the crime rather than a potential victim. The Court strongly disagrees. …
>
> At trial, the jury as fact finder apparently found Complainant's testimony to be credible. Though the Complainant was unconscious when the Appellant left the location, the jury found his testimony was properly corroborated by the testimony of Officer Koncyk and Officer Nieves. The Court's judgment of sentence may only be reversed if it is so contrary to the evidence as to shock one's sense of justice. [*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. Super. 2003)].

- 13 -

Here, the jury determined that Appellant had at least some role in setting up the Complainant … to get robbed and leaving the Complainant for dead. This was enough to establish his guilt with respect to both Appellant's Conspiracy and Robbery convictions.

The Court found the facts and circumstances surrounding the jury's verdict in the instant case to be far removed from "vague or uncertain." The evidence presented directly linked the Appellant to the charges. He was the one who initiated the drug deal on the day in question.

Therefore, this Court asserts it did not err for denying Appellant's post sentence motion as the jury's verdict and the Appellant's judgment of sentence were not against the weight of the evidence.

Trial Court Opinion, 10.

We find nothing "manifestly unreasonable" about the trial court's decision. *See Commonwealth v. Rice*, 902 A.2d 542, 547 (Pa. Super. 2006) (where trial court's "conclusions are logical and supported by evidence of record" then it "did not commit a palpable abuse of discretion" by rejecting a weight claim).

Appellant asks this Court to substitute his evaluation of the evidence for that of both the jury and the trial court because "the jury acquitted [him] of being the actual shooter, and any evidence linking him to the crime as a conspirator or accomplice was far too speculative for the Court to uphold a conviction." Appellant's Brief, 14. As demonstrated above, this is the same argument as his challenge to the sufficiency of the evidence, and as demonstrated above, the evidence is both stronger than Appellant believes and his acquittal on some charges "cannot be interpreted as a specific finding in relation to some of the evidence." *Miller*, 35 A.3d at 1213. It would be reversible error for this Court to "step[…] into the shoes of the trial judge and

revisit[…] the underlying question of whether the verdict was against the weight of the evidence." **Clay**, 64 A.3d at 1056.

Appellant's final two claims allege error by the pre-trial motion in limine court.[5] Generally, "[q]uestions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion." **Commonwealth v. Crosley**, 180 A.3d 761, 768 (Pa. Super. 2018) (citation omitted). In addition, "[w]hen ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review." **Commonwealth v. Hutchison**, 164 A.3d 494, 500 (Pa. Super. 2017) (quotations and citations omitted). **See also Commonwealth v. DiStefano**, 265 A.3d 290, 297 (Pa. 2021) (appellant cannot meet heavy burden of establishing abuse of discretion by simply persuading appellate court that it may have reached different conclusion than trial court).

"All relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402. Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Pa.R.E. 401(a), (b); **Commonwealth v. Yale**, 249 A.3d 1001, 1022 (Pa. 2021). **See also Commonwealth v. Reid**, 811 A.2d 530, 550 (Pa. 2002)

---

[5] Although raised in Appellant's Rule 1925(b) Statement, the trial court did not address the two evidentiary claims arising from the pretrial motions in limine. Nor do we have an opinion from the pre-trial motion court explaining its rulings beyond that stated during the hearing. We do not know if this was an oversight by the trial court or the motions court. Nevertheless, we can resolve these claims on the extant record.

("Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact"). However, a trial court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Before the motion in limine court, Appellant sought a ruling prohibiting the Commonwealth from cross-examining his character witnesses testifying to his reputation for non-violence about their knowledge of his open simple assault case or his two prior convictions for unlawful gun possession. N.T. 1/12/22, 42; Appellant's Motions in Limine, ¶¶ 55-57; Trial Court Record 173. The Commonwealth agreed not to cross-examine Appellant's character witnesses with respect to the gun possession convictions, but intended to cross-examine on specific instances of simple assault and domestic violence. N.T. 1/12/22, 44. At the post-sentence motion, the Commonwealth asserted that the motion in limine ruling was directed to Appellant's girlfriend, and Appellant did not disagree. N.T. 12/20/22, 22-24. The motion in limine court granted Appellant's motion in part, allowing the Commonwealth to impeach Appellant's reputation testimony with the open simple assault charge. *Id*., 46; Order, 1/12/22; Trial Court Record, 260. The court did not preclude the character evidence. Appellant chose not to present it at trial.

The court's ruling is erroneous. "In a criminal case, on cross-examination of a character witness, inquiry into allegations of other criminal

conduct by the defendant, not resulting in conviction, is not permissible." Pa.R.E. 405(a)(2). *See also Commonwealth v. Morgan*, 739 A.2d 1033, 1036 (Pa. 1999) ("we find that allowing character witnesses to be cross-examined as to their awareness of allegations that the defendant has previously engaged in criminal acts is unduly prejudicial"); *Commonwealth v. Scott*, 436 A.2d 607, 611-612 (Pa. 1981) (the Commonwealth may not cross-examine a character witness about a defendant's arrests that did not lead to convictions). We must now determine whether the court's error was harmless beyond a reasonable doubt. *Commonwealth v. Busanet*, 817 A.2d 1060, 1068 (Pa. 2002).

The harmless error doctrine "reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Hairston*, 84 A.3d 657, 671 (Pa. 2014); *Commonwealth v. Wilson*, 286 A.3d 1288, 1300 (2022), *appeal denied,* 300 A.3d 322 (Pa. 2023). Harmless error exists if the record demonstrates:

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Hairston*, 84 A.3d 671-672; *Wilson*, 286 A.3d at 1300. *See also Commonwealth v. Copenhaver*, 316 A.3d 1020, 1025 (Pa. Super. 2024).

Appellant argues that "[a]s a result of the trial court's erroneous ruling, [he] did not call character witnesses to testify. This was not harmless error; [he] had witnesses available, and the testimony of the character witnesses and corresponding jury instruction likely would have resulted in a different verdict." Appellant's Brief, 42. Appellant chose not to present character evidence, which decision was influenced by the court's erroneous ruling. The ruling, however, permitted evidence that was not then introduced at trial. In effect, two types of evidence could have been presented under the ruling, but neither were, so no inadmissible, prejudicial information was presented to the jury. The harm, if any, came from the tactical decision to not present the character evidence.

Appellant relies principally on **Commonwealth v. Weiss**, 606 A.2d 439 (Pa. 1992), in which the Pennsylvania Supreme Court found that trial counsel had been ineffective for not presenting character evidence in what amounted to a credibility case "and character evidence is critical to the jury's determination of credibility." **Id**. at 443. We are not persuaded that **Weiss** is controlling here. At heart, this was not a credibility case. Complainant did not see who fired the gunshot that came from his right. The physical evidence and undisputed fact that Appellant was in the passenger seat strongly supported the inference that Appellant fired the shot that struck Complainant in the chest. The question was not credibility *per se* but the strength of that inference.

- 18 -

To the extent that **Weiss** does apply, moreover, counsel's considered decision to decline to present the available character witnesses differs in kind from the **Weiss** trial counsel's "preconceived notions about familial character evidence [that] led to … [the] failure [of trial counsel] to even interview [Weiss'] relatives, and precluded him from assessing their credibility. … [A]n attitude that they are *per se* worthless, is sufficient evidence of counsel's incompetency." **Id**. at 443. To be clear, we understand that in **Weiss** the court applied an ineffectiveness prejudice standard to counsel's categorical approach, and that actual prejudice requires more to warrant relief. **See Commonwealth v. Howard**, 645 A.2d 1300, 1307 (Pa. 1994) (distinguishing the two standards and stating harmless error "is a lesser standard than the [ineffectiveness] prejudice standard"). Nonetheless, the instruction we take from Appellant's reliance on **Weiss** is that we must review the quality of the character evidence that counsel tactically declined to present.

At the post-sentence motion hearing, Appellant proffered two character witnesses to establish that they existed and had been willing to testify at his trial: Gina Fisher and Lauren Horsey. N.T. 12/20/22, 25. This is the only time Appellant identified his alleged character witnesses to the lower court. Although both were present in the courtroom, Appellant only elicited testimony from Ms. Fisher, a member of his family who had taken part in

raising him. *Id*., 28.[6] She knew of the trial and if called to testify would have "testified to [Appellant's] reputation for non-violence." *Id*., 26-27. On cross-examination, Ms. Fisher could not name any member of the community with whom she had spoken, and appeared to rely on the lack of anyone from outside the family telling her that Appellant had bad character to support her belief he was non-violent. *Id*. 27-28, 30. This was not proper reputation evidence. *See Commonwealth v. Medina*, 209 A.3d 992, 997 (Pa. Super. 2019) (evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation in the community for the particular relevant trait); *Commonwealth v. Luther*, 463 A.2d 1073, 1077-78 (Pa. Super. 1983) (character may be proven by testimony to a defendant's reputation in the community). Even if presented at trial, it would have carried very little weight, especially because it primarily came from a family member who had helped raise him and at most reported only his reputation within the family. *See Weiss*, 606 A.2d at 443 ("familial character witnesses generally lack the credibility of unbiased non-familial witnesses").

In contrast to Appellant, the Commonwealth argues that the motion in limine court's error was harmless because any prejudice to Appellant was *de minimis*. It argues the "evidence showed that [Appellant] conspired with other

---

[6] There was no stated reason for not eliciting testimony from Lauren Horsey. Therefore, Appellant did not establish that she was willing to testify at trial, or to what she would have testified. Her putative testimony cannot be considered in determining whether the court's error resulted in harm to Appellant's defense.

individuals to rob and shoot" Complainant, who heard "a shot from inside the car" where Appellant was the only other person in the car, and the physical evidence supported the inference that Appellant fired the gun. Appellee's Brief, 17-18. Along with the forensic evidence, the Commonwealth asserts that the totality of the evidence "persuasively proved defendant's guilt [and] any erroneous ruling with regard to the cross-examinations of character witnesses was *de minimis*." Appellee's Brief, 18.

We believe the Commonwealth's discussion must be set in context of the proffered witness Appellant declined to present. It is the general weakness, and possible inadmissibility, of the proffered reputation evidence that represents the forgone opportunity, the lack of which was the putative harm. Because of the overall lack of persuasiveness of the proffered testimony, we find that the erroneous ruling by the motion in limine court could have had no effect on the outcome of trial. *See Commonwealth v. DeJesus*, 880 A.2d 608, 614 (Pa. 2005) (citation omitted) ("[A]n evidentiary error of the trial court will be deemed harmless on appeal where the appellate court is convinced, beyond a reasonable doubt, that the error could not have contributed to the verdict"). The proffered reputation evidence would not have rebutted any part of the Commonwealth's evidence or raised a reasonable doubt of Appellant's guilt on its own. We conclude "beyond a reasonable doubt that the error could not have contributed to the verdict." *Wilson*, 286 A.3d at 1300-01.

Appellant also challenges the motion in limine court's ruling "precluding [him] from trying to prove that someone else could have committed the offense." Appellant's Brief, 45. The court did no such thing. Appellant raised three related motions to introduce evidence of Joey Smith's guilt through evidence that: (1) he was an initial suspect for whom an arrest warrant was issued; (2) the police issued a broadcast to be on the look out for Smith, which included an assertion that he was armed and dangerous; and (3) he fled to Carbon County. N.T. 1/12/22, 30-42; Appellant's Motions in Limine, ¶¶ 47-54; Trial Court Record, 170-172. The court granted the first two and denied only the third. N.T. 1/12/22, 35-36, 42; Motion in Limine Court Orders, 1/12/22; Trial Court Record, 258-259. The court explained that it denied Appellant's motion because it was contingent on the testimony of multiple state troopers, which the court understood would create a trial within a trial that would confuse the jury. N.T. 1/12/22, 37, 40, 42. The court's ruling was a reasonable application of Rule 403.

Appellant argues that under **Yale**, 249 A.3d 1001, he was entitled to introduce the evidence. To the contrary, the Pennsylvania Supreme Court held that Rule 404(b)'s restrictions do not apply to preclude evidence of another person's bad acts that would tend to prove the defendant was not guilty of the crime charged. **Id**. at 1018-21. "Given the construct of Pa.R.E. 404(b) and the absence of prejudice to an alternative perpetrator, evidence of that person's crimes, wrongs or other acts lies outside the contours of Rule 404(b) when introduced by a criminal defendant." **Id**. at 1021-22. In contrast, the

Court explicitly held that Rules 401, 402 and 403 do apply to determine the admissibility of proffered evidence of third party guilt. *Id*. at 1023 ("Third person guilt evidence is governed by Pa.R.E. 401–403").[7] Here, the motion in limine court did not exclude the evidence on Rule 404(b) grounds. Instead it applied Rule 403 and denied Appellant's request to conduct a "trial within a trial" about Joey Smith's flight from apprehension. *See* Pa.R.E. 403 ("The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of … confusing the issues, misleading the jury …").

Appellant argues that "the question is simply whether the evidence is relevant. That is, whether it makes it somewhat less likely that [Appellant] committed the crimes because Joey Smith did instead." Appellant's Brief, 49. This assertion is incorrect. Relevance is not the only question. *See Yale*, 249 A.3d at 1023 ("In order to secure both the probative and exculpatory value of third person guilt evidence and the constitutionally protected right of a

_____

[7] Thus, as the Court explained:

> In the case of third person guilt evidence, the relevant inquiries into admissibility are: Does the third person guilt evidence have a tendency to make the existence of any fact that is of consequence to the determination of the issue, e.g., the defendant's culpability, more probable or less probable than it would be without the evidence. Pa.R.E. 401. If so, is the probative value of the third person guilt evidence outweighed by any danger of "confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

*Yale*, 249 A.3d at 1022.

defendant to offer a complete defense, we hold that Rules 401 through 403 provide the correct approach for assessing third person guilt evidence").

By misconstruing the law, Appellant ignores the stated reason the motion in limine court excluded the proffered evidence of third party flight. Notably, the motion in limine court permitted Appellant to introduce third party guilt evidence that Smith was subject to an arrest warrant for the instant crime and was sought by police in the immediate aftermath as being armed and dangerous. We therefore discern no abuse of discretion in the court's application of Rule 403 to determine that the probative value of multiple witnesses testifying to Smith's ultimate flight to Carbon County was outweighed by the danger of confusing issues for the jury. *See Commonwealth v. Akrie*, 159 A.3d 982, 987-988 (Pa. Super. 2017) (holding that exclusion of some evidence was not an abuse of discretion where the important gist of the defendant's claim was admitted through other evidence and the apparent danger that the excluded evidence would have diverted the jury's focus on the crime at issue); *Commonwealth v. Thompson*, 93 A.3d 478, 492 (Pa. Super. 2014) (holding that trial court did not abuse its discretion by excluding relevant evidence where the probative value "was outweighed by the risk of undue prejudice to the Commonwealth and/or the danger that it would confuse or mislead the jury by delving into matters ancillary to Appellant's guilt or innocence").

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/19/2024